UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
NICHOLAS DEJESUS,  :
                                                     Petitioner,  : **MEMORANDUM DECISION AND ORDER**

                     - against -  : 19-cv-1028 (BMC)

J. NOETH, Superintendent,  :

                                 Respondent.  :
---------------------------------------------------------- X

**COGAN**, District Judge.

    Petitioner *pro se* seeks habeas corpus relief pursuant to 28 U.S.C. § 2254 from his conviction for second degree robbery (N.Y. PENAL LAW § 160.10(2)(B)). The facts relating to his conviction will be set forth below as necessary to address each of petitioner's points of error, but to summarize, this was a street robbery in which petitioner and his wife, using a BB gun, stole about $26 from the victim. The victim immediately flagged down a police car as petitioner and his wife fled, and the victim identified them when they were apprehended about 1 ½ blocks away. Petitioner's wife was carrying the BB gun and $36 in cash. Petitioner was convicted at a second jury trial after the jury in his first trial was unable to reach a unanimous verdict.

    The habeas corpus petition filed here is on Official Form 241, which includes spaces for five grounds to be raised, in addition to such others as might be raised in supplemental pages. Petitioner has completed the spaces for only three of those grounds. However, consistent with his state court filings, each of his three grounds is in fact comprised of between 2 and 5 subpoints which sometimes have no relationship to each other. In discussing his points below, I will combine those which are subsets of broader points and treat separately those that are not. As will

be shown, each point is either procedurally barred, non-cognizable on federal habeas corpus review, or without merit. The petition is therefore denied.

I.  **Sandoval Ruling**

Petitioner did not testify at trial. He contends that this was because, prior to trial, the trial court had ruled pursuant to People v. Sandoval, 34 N.Y.2d 371, 357 N.Y.S.2d 849 (1974), that if he did testify, he would be subject to impeachment with a prior robbery conviction (the only one of four prior convictions upon which the trial court would have allowed impeachment). On direct appeal, the Appellate Division affirmed this ruling on the merits as within the trial court's discretion. People v. DeJesus, 135 A.D.3d 872, 22 N.Y.S.3d 601 (2nd Dep't 2016).

It is well settled that because petitioner did not testify, this issue is not cognizable on federal habeas corpus review. Federal courts will not address hypothetical questions as to what impact the prior conviction might have had on the jury if petitioner had testified. See Luce v. United States, 469 U.S. 38, 41 (1984) (holding that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify" because where he does not, the nature of his testimony is "unknowable," any harm from the ruling is "wholly speculative," the court "cannot assume that the adverse ruling motivated [the] defendant's decision not to testify," and the court has no way to conduct a harmless error analysis); Mercado v. Phillips, No. 04-CIV-2204, 2011 WL 1157617, at *6 (S.D.N.Y. Feb. 22, 2011) (collecting cases); Butler v. Graham, No. 07-CIV-6586, 2008 WL 2388740, at *8 (S.D.N.Y. June 12, 2008) ("[E]ven though there is no unequivocal guidance on the application of *Luce* in habeas cases challenging a state-court conviction, we are of the opinion that the analysis in *Luce* should be deemed applicable to a habeas petitioner's challenge ... ."); Peterson v. LeFevre, 753 F. Supp. 518, 521 (S.D.N.Y.), aff'd, 940 F.2d 649 (2d Cir. 1991).

Petitioner's point of error is therefore rejected.

## II.     Evidentiary Error

On direct appeal, petitioner combined three alleged evidentiary errors to contend that he had been deprived of a fair trial, including the right to confront the victim and present a defense. These were as follows.

First, the trial court limited cross-examination of the victim.  Specifically, petitioner's counsel tried to show that the victim had the opportunity (aside from the opportunity he had as a result of the crime) to learn that the BB gun had a unique feature – a slide that "racked," *i.e.*, the top part of the gun would pull back to charge it.  This is a feature common among real semi-automatic weapons, but, according to testimony from the arresting officer at trial, not among BB guns.  Petitioner's counsel wanted to show that the victim was present while the police were examining the gun, thus giving the victim the opportunity to learn only at that point, and later testify, that it had a racking slide.

Second, although the victim testified that he drank beer on the evening of the robbery, the trial court refused to strike a portion of his testimony over defense counsel's claim of allegedly inconsistent prior grand jury testimony about when he had been drinking.  Before the grand jury, the victim had been asked, "watching the [prize] fight[,] *had you had* anything to drink?" (emphasis added), and the victim had answered "two beers."  At trial, defense counsel asked him a slightly different question, using the past tense instead of the past perfect tense: had he "drank *during* the fight[?]" (emphasis added), to which the victim testified "[d]uring the dinner, not during the fight."  The trial court rejected counsel's contention that the statements were

3

inconsistent, and refused to strike the trial testimony as inconsistent with the grand jury testimony.

Third, the trial court permitted the prosecutor to introduce the victim's prior consistent statement (as compared to his trial testimony) to the police that a Hispanic man and woman had robbed him. After the victim was cross-examined, the arresting officer was permitted to testify about the particulars of what the victim had told him at the scene, which were substantially the same as the victim's testimony at trial. Defense counsel contended that since he had not sought to contend that the victim was lying at trial, but only that the victim was mistaken because he was drunk, there was no basis to rehabilitate the victim's credibility through the police officer's testimony, and the police officer's description of the complainant's statement was inadmissible hearsay.

The Appellate Division summarily rejected this combined point on the merits. DeJesus, 135 A.D.3d at 873, 22 N.Y.S.3d at 602. This means that my review of its decision is subject to the limitations of the Anti-Terrorism and Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. Section 2254(d)(1) permits reversal only if a state court's legal conclusion is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States … ." 28 U.S.C. § 2254(d)(1). The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature," or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405 (2000) (internal quotation marks omitted). A state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005).

4

The Supreme Court has made clear that the AEDPA standard of review is extremely narrow, and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal . . . ." Ryan v. Gonzales, 568 U.S. 57, 75 (2013) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 88 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Since Harrington, the Supreme Court has repeatedly admonished Circuit Courts for not affording sufficient deference to state court determinations of constitutional issues. See, e.g., White v. Wheeler, 136 S. Ct. 456, 460 (2015) (quoting Burt v. Titlow, 571 U.S. 12, 19 (2013) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'").

It is not only AEDPA that creates an obstacle to the acceptance of petitioner's argument. Even without AEDPA, the standard for reviewing discretionary evidentiary rulings is narrow. As the Second Circuit held in Taylor v. Curry, 708 F.2d 886, 890-91 (2d Cir. 1983), "[e]rroneous [state court] evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial." Accord Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[H]abeas corpus relief does not lie for errors of state law.") (internal quotation marks and citation omitted); Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004) (per curiam). Petitioner thus bears a "heavy burden, for generally, rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a

5

constitutional violation." Bonet v. McGinnis, 98-CV-6529, 2001 WL 849454, at *2 (S.D.N.Y. July 27, 2001) (internal quotation marks omitted); see also Crane v. Kentucky, 476 U.S. 683, 689 (1986) ("We acknowledge . . . our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts."); Ayala v. Leonardo, 20 F.3d 83, 91 (2d Cir. 1994).

When measured against these two obstacles (AEDPA and the limited standard of review for discretionary evidentiary rulings), petitioner comes nowhere near a valid constitutional claim. The alleged errors themselves demonstrated quite a lot of creativity from his appellate counsel, as the record did not wholly support the way petitioner's counsel characterized it. For example, the victim testified quite clearly on direct examination that he had not seen the police officers examining the gun, although he had seen them recover it. The question that the trial court precluded as repetitive was whether the victim had "heard" the police examining the gun, but since he had already testified that he had not seen the examination, it was doubtful that he had "heard" the examination. The trial court's ruling was particularly within its discretion since the victim testified that there were about six patrol cars at the scene and he was more than twenty feet away from petitioner when the police apprehended and searched him. And defense counsel was permitted to extensively question the victim's observations when the officer recovered the gun – the answer to which was, he didn't have any.

As to the alleged inconsistency between the victim's trial and grand jury testimony, it is easily disposed of because the jury heard both, leaving defendant free to argue that the victim had changed his testimony. I see no reason why the trial court had to take defendant's side and strike the victim's trial testimony where the alleged inconsistency was far from patent. There is certainly no Supreme Court authority that requires that – the determination of whether there was

6

an inconsistency and whether it mattered, unless it is clear as a matter of law one way or the other, is for the jury to determine. Indeed, even if we were dealing with a patent inconsistency, nothing in the law required the trial court to strike the trial testimony. Inconsistencies remain a matter for the jury to consider.

Finally, appellate counsel's contention that the prosecutor could not rehabilitate the victim's testimony with a prior consistent statement – on the ground that the victim had only been attacked as intoxicated, not deliberately dissembling – fares no better. Appellate counsel contended that the trial court should not have allowed the victim's testimony to be bolstered by evidence of the prior inconsistent statement because there was no suggestion that the testimony was recently fabricated, and suggestions that testimony "is the product of confusion or mistake do not charge fabrication … ." People v. Seit, 86 N.Y.2d 92, 95-96, 629 N.Y.S.2d 998, 1000 (1995). Even assuming *arguendo* that this is the evidentiary rule of New York law – and it is not at all clear that it is – see People v. Tosca, 98 N.Y.2d 660, 661, 746 N.Y.S.2d 276 (2002) (allowing witness's prior statement as background to explain why the police stopped the defendant) – there is nothing in federal constitutional law, let alone federal constitutional law as pronounced by the Supreme Court of the United States, that adopts this rule.[1] Since this argument relies on New York state law – not federal constitutional law as determined by the

---

[1] In Tome v. U.S., 513 U.S. 150 (1995), the Supreme Court held that under Federal Rule of Evidence 801(d)(1)(B) as it then existed, a prior consistent statement offered to rebut a charge of recent fabrication or improper influence or motive must have been made before the alleged fabrication or improper influence or motive arose. Tome, however, was not a constitutional case; it merely construed a codified rule of evidence and thus contained no language referencing due process or other constitutional considerations. This is confirmed because in 2014, Fed. R. Evid. 801(d)(1)(B), subsection (B)(ii) and (C) were added to broaden the bases for admitting prior consistent statements. As the Advisory Committee noted, the "intent of the amendment is to extend substantive effect to consistent statements that rebut other attacks on a witness -- such as the charges of inconsistency or *faulty memory*." Fed. R. Evid. 801(d)(1)(B)(ii) (2014 Advisory Committee notes) (emphasis added). See also U.S. v. Mack, No. 13-cr-54, 2016 WL 4373695, at *10 (D. Conn. Aug. 15, 2016) (under amended Rule 801(d)(1)(B)(ii), allowing prior consistent statement to rebut charge that witness had faulty memory).

7

Supreme Court of the United States – it is not cognizable on federal habeas corpus review. See 28 U.S.C. § 2254(d)(1).[2]

None of these evidentiary rulings were e constitutional error under analogous Supreme Court authority.

### III. Insufficiency of the Evidence

While his direct appeal was pending, petitioner filed a motion in the trial court pursuant to N.Y. CRIM. PROC. LAW § 440.10 to vacate his conviction on the ground, *inter alia*, that the evidence was insufficient to sustain it.[3] The § 440 court denied the motion as procedurally barred. This was because, under New York practice, challenges to the sufficiency of the evidence can only be raised on direct appeal, see N.Y. CRIM. PROC. LAW. § 440.10(2)(c), and by the time of the § 440 court's decision, the Appellate Division had already affirmed petitioner's conviction on direct appeal without the point having been raised.

A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is *independent* of the federal question raised and *adequate* to support the judgment." Lee v. Kemna, 534 U.S. 362, 375 (2002) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)) (emphasis in original). When a state court rejects a petitioner's claim because he "failed to meet a state procedural requirement[,]" the procedural bar may constitute an adequate and independent ground for the state court's decision. Coleman, 501 U.S. at 729-30. See also Murden v. Artuz, 497 F.3d 178, 191-92 (2d

---

[2] In addition, at trial, defense counsel only objected on the grounds that the relevant testimony was hearsay. The trial court appropriately overruled this objection. In light of the circumstances – the victim had just been robbed at gunpoint – the statement was at least an excited utterance, and potentially also a present sense impression.

[3] The § 440 motion also appeared to raise the same grounds as were then pending on direct appeal.

Cir. 2007). State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state. Lee, 534 U.S. at 376 (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)).

The Supreme Court has held that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" Harris v. Reed, 489 U.S. 255, 262 (1989) (citations omitted). Although a claim of ineffective assistance of counsel may constitute cause and prejudice, the petitioner must have exhausted the ineffective assistance claim in state court. See Edwards v. Carpenter, 529 U.S. 446, 450-51, 120 S. Ct. 1587, 1591 (2001).

The petition filed in this Court asserts that petitioner's appellate counsel "refused" to raise the legal insufficiency point on appeal. However, there is nothing in the record to suggest that petitioner ever challenged his appellate counsel as constitutionally ineffective for failing to do so. Under Edwards, he therefore cannot rely on the ineffective assistance of appellate counsel as the basis for demonstrating cause or prejudice sufficient to relieve him of the state law procedural bar.[4] There is no other basis identified sufficient to constitute cause and prejudice.

Nor is this a case presenting a "fundamental miscarriage of justice." Far from it. Petitioner's legal insufficiency argument simply asserted that since the prosecutor had elected to dismiss a lesser charge of possession of stolen property, that necessarily meant that the charge for second degree robbery also had to be dismissed. His motion did not explain how his

---

[4] For the same reason, any challenge to appellate counsel's decision not to raise legal insufficiency would most certainly fail. See Smith v. Robbins, 528 U.S. 259, 285-89 (2000).

9

conclusion followed from the dismissal of the lesser charge, and I see no reason that it would.[5] The jury found that petitioner committed second degree robbery and since the testimony of the victim and the police officer was sufficient to satisfy each element of that crime, the verdict does not approach manifest injustice.

## IV. Ineffective assistance of trial counsel

### A. Second § 440 motion

In a second § 440 motion, petitioner contended that his trial counsel was ineffective for failing to (1) call his brother as witness; (2) call his wife as a witness (she had testified in his first trial)[6]; (3) impeach the victim with police notes showing that he was robbed of $25, not $26, as the victim testified; (4) move for dismissal based on another theory of legal insufficiency; and (5) seek recusal of the trial judge prior to sentencing.

The § 440 court held that because petitioner relied only on the trial record for points (2), (4), and (5) in the preceding paragraph, those points had to be raised on direct appeal and were waived because he had not raised them, citing C.P.L. § 440.10(2)(c). That procedural bar is enforceable on federal habeas corpus for the same reasons as in the preceding point discussed above. That is, petitioner has not demonstrated cause and prejudice because he never exhausted

---

[5] Petitioner re-cast his argument a couple of different ways in state court and does the same in his habeas corpus petition. First, petitioner asserted that the prosecutor knew the victim's testimony was false. But the truthfulness of the victim's testimony was for the jury to determine; the mere argument by petitioner that it was false did not make it so. Second, petitioner used the term "factual innocence" to suggest that he did not commit the crime, but in context, he was making the same point noted above, i.e., that since the possession of stolen property count was withdrawn, that purportedly precluded the second degree robbery count as well.

[6] The point about calling plaintiff's wife was somewhat convoluted. In testifying at petitioner's first trial, his wife lied about her criminal history, although the lie was apparently not caught. At his second trial, his trial counsel explained on the record (outside of the jury's hearing) that he had decided not to call her again because of her criminal history and her dissembling during the first trial. Even if this claim was not procedurally barred, petitioner's trial counsel articulated a sound strategic reason for not calling her, and thus the claim would have failed on the merits under the standard of Strickland v. Washington, 466 U.S. 668 (1984), set forth below.

a claim for ineffective assistance of appellate counsel for failing to raise these claims on direct appeal, and there is no manifest injustice.

The § 440 court denied points (1) and (3) on the merits. This triggers the restrictive AEDPA standard of review set forth above. In addition, petitioner's burden is doubly difficult because the standard for proving ineffective assistance of trial counsel is itself narrow. The relevant test is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Petitioner must initially show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. The court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (internal quotation marks and citations omitted). Second, under the "prejudice" prong, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 664. "The likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112. Moreover, as the Second Circuit has recently noted, "[t]he prejudice inquiry is . . . ineluctably tied to the strength of the prosecution's evidence." Garner v. Lee, 908 F.3d 845, 862 (2d Cir. 2018).

In this second § 440 motion, petitioner supported point (1) above – failure to call his brother at trial – by an affidavit from his brother saying that the BB gun was his (the brother's) and that petitioner's wife had taken it from him at a party. But the § 440 court rejected that claim for two reasons. First, petitioner did not allege – let alone offer evidence– that he had ever told his trial counsel that his brother had this information, nor did he show any other way that his trial counsel could have known. Second, the information did not tend to exonerate petitioner.

The victim had testified that he was robbed by petitioner and his wife, so the fact that she had obtained the BB gun from petitioner's brother did not in any way prevent petitioner from using it during the robbery. If anything, the § 440 court recognized, the brother's testimony would have established how the BB gun came to be used in the crime, hardly a helpful point for petitioner. Thus, the § 440 court held, the failure to call petitioner's brother was neither objectively unreasonable nor prejudicial.

I see no error, let alone AEDPA-level error, in the § 440 court's application of <u>Strickland</u>'s general requirements. The court's reasoning was sound. Petitioner failed to show that his trial counsel had missed anything of substance. Even if counsel had known about the brother's proffered testimony, that testimony was just as or more likely to have made things worse for petitioner rather than better. There is no basis for habeas corpus relief.

Point (3) above – the failure to cross-examine the victim based on a police memo book entry showing that the victim had told police at the scene that petitioner had taken $25, not $26 – has even less merit. Like the § 440 court, I see no inconsistency of any consequence between the police memo book and the victim's testimony at trial – when asked at trial how much was stolen, the victim testified "$25, $26." Defendant's counsel cross-examined the victim about this alleged inconsistency, and again referred to this alleged inconsistency during his summation. For defense to have further stressed this minor difference to the jury would have made him seem desperate.

The § 440 court's decision on the merits as to these two ineffective assistance of trial counsel points was therefore neither contrary to, nor an unreasonable application of, any Supreme Court authority.[7]

**B.     Third § 440 motion**

In a third § 440 motion (this one under C.P.L. § 440.20), petitioner sought to vacate his sentence. The basis of the motion was his assertion that his trial counsel was constitutionally ineffective because he had failed to challenge a prior sentence of petitioner from a 2004 conviction which served as a predicate for the sentencing court's finding that he was a second felony offender. See N.Y. PENAL LAW § 70.10. Specifically, petitioner's 2004 sentence put him into that class of New York defendants who had terms of post-release supervision imposed administratively post-sentencing as opposed to judicially during sentencing, a practice later found illegal. See Murray v. Earley, 451 F.3d 71 (2d Cir. 2006); Garner v. New York State Dept. of Correctional Services, 10 N.Y.3d 358, 859 N.Y.S.2d 590 (2008); People v. Sparber, 10 N.Y.3d 457, 859 N.Y.S.2d 582 (2008). Petitioner contended that since his prior sentence had been illegal, it could not serve as a predicate for second felony offender status, and trial counsel was ineffective for not raising that point.

The § 440 court rejected this argument on the merits because petitioner presented incomplete facts, and the complete picture demonstrated that petitioner's prior sentence was not infirm. Although post-release supervision had been administratively added to his 2004 sentence, he was re-sentenced in 2009 once the case law cited above established the need to do so. At that resentencing, he and his attorney were both present, and post-release supervision was imposed

---

[7]The § 440 court also rejected on the merits petitioner's "actual innocence" claim.

13

by a judge. It was only after that sentence that petitioner committed the robbery that led to his in conviction for the robbery at issue here.

Thus, petitioner was wrong on the facts, and the § 440 court's conclusion easily survives AEDPA review.

## CONCLUSION

For the reasons set forth above, the petition is denied, and the case is dismissed. Petitioner's motion for the appointment of counsel is denied as moot. Because the petition raises no substantial constitutional question, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c). An appeal would not be taken in good faith and therefore i*n forma pauperis* status is denied for purposes of appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

S/Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
April 1, 2019